UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**RENATO SAMPAIO TORRES**   CASE NO. 5:25-CV-00252

**VERSUS**   JUDGE TERRY A. DOUGHTY

**CANDY DIANA PASTOR**   MAGISTRATE JUDGE HORNSBY

MEMORANDUM ORDER

Before the Court is a *Motion for Payment of Necessary Fees and Expenses* (ECF No. 33), filed by the petitioner in this case, Renato Torres ("Petitioner"). The respondent, Candy Pastor Marion ("Respondent"), filed an *Objection* (ECF No. 35).

After careful consideration of the parties' memoranda and the law, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

I. BACKGROUND

This case arises under the Hague Convention. *See* 22 U.S.C. § 9001, *et seq*. The Court previously found that Respondent removed her and Petitioner's minor child ("GRT") from Brazil to the United States in violation of Petitioner's custodial rights. *See generally*, ECF No. 28. Accordingly, the Court ordered Respondent to return GRT to Brazil, *see id.* at 17, and GRT was so returned, s*ee* ECF No. 29. Now, Petitioner moves the Court to award him attorney's fees and other costs. *See* ECF No. 33.

II. LEGAL STANDARD

The 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), contain a one-way fee

1

shifting provision, providing an award of necessary fees and expenses to a prevailing petitioner. *Salazar v. Maimon*, 750 F.3d 514, 519–20 (5th Cir. 2014); *see also* Hague Convention, art. 26; 42 U.S.C. § 11607(b)(3). Specifically, ICARA requires:

> Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster homes or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3).

Under the Hague Convention, an award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention," and (2) "to deter such removal or retention." Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986). "The sparse legislative history of the [ICARA's fee-shifting] provision reveals it was 'intended to provide an additional deterrent to wrongful international child removals and retentions.'" *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 80 (2d Cir. 2016) (quoting H.R. Rep. No. 100–525, at 14 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 386, 395). Nonetheless, in this fee-shifting context, "Congress built a safety valve directly into the statute, leaving it to courts to determine when an award of expenses would be clearly inappropriate, notwithstanding the additional deterrence value such expenses might provide." *Id.*

A party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and his or her rates. *See Hensley v. Eckerhart*, 461 U.S.

2

424, 433 (1983). It is the Respondent's burden to show that an award of attorney's fees and costs would be "clearly inappropriate." *Saldivar*, 879 F. Supp. 2d at 632.

## III. ANALYSIS

Petitioner claims that he is entitled to attorney's fees and costs under 42 U.S.C. § 11607(b)(3). He requests $50,599.78 for expenses incurred from bringing this ICARA action. Specifically, he expended $2,041.32 for costs; $44,160.07 for legal fees and expenses; $1,600.00 for translation services; and $2,798.39 for travel. *See generally* ECF No. 33. Petitioner asserts that his attorney's fees—from Mr. Haines, Ms. Lasky, and Mr. Bastos—are reasonable when tested under the lodestar method. In this case, Petitioner's attorneys have charged the following rates and amounts:

| **Attorney** | **Hours** | **Rate** | **Total** |
|---|---|---|---|
| K. Haines | 37.3 | $375.00 | $13,987.50 |
| C. Lasky | 38.8 | $350.00 | $13,580.00 |
| D. Bastos | 41 | $375.00 | $15,375.00 |

The Court's analysis of an award for attorney's fees proceeds in two parts. First, the Court determines whether Petitioner's attorney's fees are in fact reasonable. Second, the Court examines whether it would be "clearly inappropriate" under 42 U.S.C. § 11607(b)(3) to require Respondent to reimburse Petitioner.

### A. Reasonable Attorney's Fees

*1. Lodestar Method*

The lodestar method is traditionally used to determine an appropriate attorney's fee award in Hague Convention cases. *See Salazar*, 750 F.3d at 523; *see*

*e.g.*, *Freier v. Freier*, 985 F. Supp. 710, 712 (E.D. Mich. 1997) (determining the amount of "reasonable attorney's fees" under ICARA by employing the lodestar formula); *Berendsen v. Nichols*, 938 F. Supp. 737, 738 (D. Kan. 1996) (same). Moreover, the lodestar approach is "generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckhart*, 461 U.S. 424, 433 n.7 (1983).

Under the lodestar method, the amount of a fee award is calculated by "multiplying the reasonable hourly rate by the number of hours reasonably expended." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 282 (5th Cir. 2008). There is a strong presumption of the reasonableness of the lodestar amount. *Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 800 (5th Cir. 2006). After calculating the lodestar, however, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.*

(a) Hourly Rates

The reasonableness of an attorney's hourly rate "depends on the experience and qualifications of the professional." *Trs. of Chi. Plastering Inst. Pension Trust v. Cook Plastering Co.*, 570 F.3d 890, 905 (7th Cir. 2009). "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." *Hopwood*, 236 F.3d at 281 (5th Cir. 2000) (quotation marks and citation omitted). The relevant market is "the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir.

4

2002) (quoting *Scham v. Dist. Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998) (criticizing the appellant because he "made no effort to show what his services are worth in Houston")). Typically, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there. *Tollett*, 285 F.3d at 368 (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)).

From the Court's experience, Petitioner's stateside attorneys' rates, ranging from $350.00 to $375.00, are reasonable. Mr. Haines' practice is based in Shreveport, and his rate of $375.00 per hour is within reason for a partner in that community. *See* ECF No. 33-3. Similarly, Ms. Lasky's rate of $350 is reasonable for a partner in New Orleans or Shreveport. *See* ECF No. 33-2. Given their specialized practice, skill, experience, and reputation, the Court finds their rates reasonable.[1]

The same cannot be said for Mr. Bastos, the Brazilian attorney. To be sure, a foreign lawyer's services can be "necessary expenses" under ICARA, and we find here that Mr. Bastos's services were instrumental in achieving GRT's return to Brazil. *See Distler v. Distler,* 26 F.Supp.2d 723, 728 (D.N.J. 1998). But we have no basis for his claimed $375.00-an-hour fee. *See* ECF No. 33-4. "[M]ere testimony that a given [foreign lawyer's] fee is reasonable is not satisfactory evidence of a market rate," *Haylock v. Ebanks,* CIV.A. 13-432, 2013 WL 5410463 at *4 (E.D. La. Sept. 25, 2013), and we don't even have that. Out of curiosity, the Court went hunting for information on the prevailing market rates relevant to Mr. Bastos's practice. Conveniently, the "*Ordem dos Advogados do Brasil*" ("OAB") compiles a yearly "*Tabela Indicativa de*

---

[1] So too for Ms. Lasky's paralegal at $150.00 per hour. *See* ECF No. 33-2.

*Honorarios"* which translates to an "indicative fees table" for various Brazilian states. The 2025 OAB fee table for the state of Rio de Janeiro provides a highly specific, variable table of fees. *See* ORDEM DOS ADVOGADOS DO BRASIL – SEÇÃO DO ESTADO DO RIO DE JANEIRO, *Tabela Indicativa de Honorários 2025* (2025), https://www.oabrj.org.br/tabela-de-honorarios (hereinafter, "OAB Table"). The Court cannot glean a reasonable fee from this table alone; however, many of Mr. Bastos's billing entries apparently fall into activity categories that command an average of 1,000 Brazilian Reals per hour or less. *See* OAB Table at 9–10; *see also*, ECF No. 33-4. This is roughly $182.00 USD. Furthermore, the OAB table instructs that a fixed-fee rate of 6,572.54 Brazilian Reals (or $1,196.94 USD) is average for resolving an "Ordinary child abduction." *See* OAB Table at 22. Of course, this is no ordinary child abduction, but Mr. Bastos seeks $15,375.00, nearly 13 times that amount. Accordingly, in order to justify his $375.00-an-hour rate, Mr. Bastos will need to provide an affidavit of a disinterested lawyer, from Rio,[2] attesting that his fee is reasonable given his experience, and for these services, or "the Court [will] find[] [Bastos]'s fee unreasonable, and unrecoverable for these reasons." *See Haylock*, 2013 WL 5410463 at *4.

(b) Hours Claimed

The district court must determine whether the hours claimed were "reasonably expended" on the litigation; that is, whether the total hours claimed were reasonable

---

[2] We cannot simply extrapolate a prevailing Shreveport rate to Mr. Bastos's services because he did not practice before this Court in the manner contemplated in *Tollett*, 285 F.3d at 368. Indeed, he is not admitted to practice in this or any federal court.

and whether specific hours claimed were reasonably expended. *La. Power & Light Co.,* 50 F.3d at 324; *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.,* 119 F.3d 1228, 1232 (5th Cir. 1997). The fee applicant bears the burden of establishing the reasonableness of the number of hours expended on the litigation, *Leroy v. City of Hous.,* 906 F.2d 1068, 1079 (5th Cir. 1990), and must present adequately documented time records to the court, *Watkins,* 7 F.3d at 457. *See also Bode v. United States,* 919 F.2d 1044, 1047 (5th Cir. 1990) ("In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours."). Using this documented time as a benchmark, the court must exclude hours that, though actually expended, are excessive, duplicative, or inadequately documented. *Watkins,* 7 F.3d at 457; *McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 381 (5th Cir. 2011).

A review of the billing statements demonstrates that the descriptions of the claimed activities, and the time incurred for them, are reasonable. See ECF Nos. 33-2, 33-3, & 33-4. Respondent contends that three attorneys were too much for this case but cites no authority for, nor really explains, this proposition. *See* ECF No. 35 at 3. Reviewing the cases, and further explained below, the hours expended in this case are well within the reasonable threshold for Hague Convention matters. Accordingly, the Court finds the lodestar amount, exclusive of Mr. Bastos, to be reasonably calculated at $28,785.07. *See* ECF No. 33 at 2.

7

*(2) Johnson Factors*

a. Time and labor required

Hague Convention cases are generally expedited in nature—with six weeks recommended for resolution. *See* Hague Convention, arts. 2, 11. The United States Supreme Court has instructed lower courts "to decide [Hague Convention] cases [on international child abduction] as expeditiously as possible." *Chafin v. Chafin*, 568 U.S. 165, 179 (2013). Recognizing that expediency in resolving Hague Convention cases is in the interest of justice, the Supreme Court has even suggested to the Advisory Committees on Federal Rules of Civil and Appellate Procedures to consider "whether uniform rules for expediting Convention proceedings are in order." *Id.* at 182–83 n.3. In accordance with the Supreme Court's guidance, this Court prioritized the proceeding and ordered parties to comply with a fast and abbreviated schedule. The attorneys briefed a variety of issues and attended two days of trial on the matter.

b. Novelty and difficulty of the questions

The Court finds that this is a straightforward Hague Convention case that applied settled law: all defenses advanced by Respondent fall under established exceptions for an ICARA case, *i.e.*, mature child's objection, consent or acquiescence, and grave risk of harm. State and federal courts often address Hague Convention issues.

c. Skill required to perform the legal service properly

This factor requires the Court to assess "the attorney's work product, . . . his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. The

8

Court makes such determination from its experience as a lawyer and as a judge. *See id.* From the Court's observation, Petitioner indeed hired learned counsel who successfully helped him secure the return of his minor child. Petitioner's attorneys delivered quality and professional work.

    d. Preclusion of other employment due to acceptance of the case

Petitioner represents that his counsel was precluded from accepting employment in other matters as a result of the expedited nature of this case. However, the assertion regarding preclusion of other employment by Petitioner's attorneys due to acceptance of this case is conclusory and does not indicate any alteration of counsels' business other than simply filling the attorneys' workloads.

    e. The customary fee charged for services in the relevant community

The Fifth Circuit has held that when an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir.1995). A reasonable hourly rate is defined as the prevailing market rate, in the relevant legal community, for similar services by attorneys of reasonably comparable skill, experience and reputation. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted).

From the Court's experience, and as explained above, Mr. Haines and Ms. Lasky's rates are reasonable. Furthermore, five years ago, the Fifth Circuit affirmed

9

an attorney's rate of $450.00 per hour in a Hague Convention case filed in the Southern District of Texas. *See Salazar*, 750 F.3d at 523. Finding counsel specialized in Hague Convention cases is difficult. Indeed, based on the Court's knowledge, Hague Convention cases are rarely filed in the Western District of Louisiana. Therefore, the Court finds that Petitioner rationally hired multiple lawyers.

    f. Whether the fee is fixed or contingent

Fixed.

    g. Time limitations imposed by the client or circumstances

As mentioned above, Hague Convention cases, such as this one, are expedited in nature. This case was filed and resolved within ten weeks.

    h. Amount involved and the results obtained

Petitioner achieved his desired outcome: the return of his Child to Brazil

    i. Experience, reputation, and ability of the attorneys

Petitioner's attorneys are skilled and very capable professionals and produced quality work.

    j. The "undesirability" of the case

Petitioner's case is a typical Hague Convention case and attorneys were compensated at an hourly rate, regardless of the result. Thus, this factor is neutral.

    k. The nature and length of the professional relationship with the client

This factor is designed to consider those instances in which an attorney in private practice may vary his or her fee for similar work in light of the professional

relationship with the client. Since Petitioner's case is a one-time matter, this *Johnson* factor is irrelevant.

    l. Awards in similar cases

The Court's research has revealed a wide range of awards in Hague Convention cases based on different rates and time logged. *See e.g.*, *Salazar*, 750 F.3d at 523 (affirming an award of $39,079.13 for attorney's fees and expenses after district court reduced award by half from $75,149.91); *Kufner v. Kufner*, No. C.A. 07-46S, 2007 WL 1521248, at *3 (D.R.I. May 23, 2007) (awarding $248,811.00 for attorney's fees and $105,906.06 for expenses and costs); *Olesen-Frayne v. Olesen*, No. 2:09-cv-49-FTM-29DNF, 2009 WL 3048451, at *2 (M.D. Fla. Sept. 21, 2009) (awarding $109,542.50 for attorney's fees and $11,314.10 for expenses); *Wasniewski v. Grzelak-Johannsen*, 549 F. Supp. 2d 965, 980–81 (N.D. Ohio 2008) (awarding $117,890.73 for attorney's fees and expenses); *Chafin v. Chafin*, No. CV-11-J-1461-NE, 2012 WL 12893523 (N.D. Ala. Mar. 7, 2012) (finding $85,580.00 in attorney's fees, including the value of *pro bono* time reasonable and awarded to the petitioner); *Knigge ex rel. Corvese v. Corvese*, No. 01 CIV. 5743 (DLC), 2001 WL 883644, at *5 (S.D.N.Y. Aug. 6, 2001) (awarding $44,463.60 for attorney's fees); *Neves v. Neves*, 637 F. Supp. 2d 322, 347–48 (W.D.N.C. 2009) (awarding $39,999.36 for attorney's fees and expenses); *Fuentes-Rangel v. Woodman*, No. 2:14-cv-00005-WCO, 2015 WL 12999707, at *4 (N.D. Ga. July 29, 2015) (awarding $37,600.00 for attorney's fees and expenses); *Ostos v. Vega*, No. 3:14-cv-3935-L, 2016 WL 1170830, at *3 (N.D. Tex. Mar. 25, 2016) (awarding $37,194.71 for attorney's fees and expenses).

Generally, Hague Convention cases are heavily fact-specific and present diverse scenarios that demand different degrees of legal services. Setting a reasonable attorney's fee for this type of case presents a unique challenge. Nonetheless, considering the lodestar method and *Johnson* factors described above, the Court concludes that Petitioner's attorney's fees of $28,785.07 are reasonable.

### B. Costs

The Court further finds that Petitioner's requests for $2,041.32 for court costs, $1,438.73 for his travel to the United States, and $1,600.00 for translation services, are not "extravagant," *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987), and thus fall within the ambit of "necessary expenses" contemplated under ICARA, *see* 42 U.S.C. § 11607(b)(3). However, the Court finds that the $1,438.73 in travel for Petitioner's father (the paternal grandfather), *see* ECF No. 33-5 at 4, was not necessary for GRT's return and is thus not awardable under the law.

Altogether, the Court finds that Petitioner should receive $33,865.12 in total fees and costs.

### C. Clearly Inappropriate

Courts have discretion under ICARA to reduce a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs where such an award "would be clearly inappropriate." *Distler v. Distler*, 26 F. Supp. 2d 723, 729 (D.N.J. 1998) (quoting 42 U.S.C. § 11607(b)(3)). A review of the cases applying ICARA's "clearly inappropriate" caveat reveals that the analysis is highly fact specific and involves an equitable balancing of several factors including financial circumstances." *Kufner v.*

*Kufner*, No. CIV.A. 07-046 S, 2010 WL 431762, at *5 (D.R.I. Feb. 3, 2010) (citing *Neves v. Neves*, 637 F.Supp.2d 322, 345 (W.D.N.C. 2009)); *see, e.g.*, *Silverman v. Silverman*, No. Civ. 00–2274 JRT, 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004) (eliminating fee where respondent had no ability to pay, and prevailing petitioner did not abide by prior court orders, had failed to support children financially in the past, and had been physically and mentally abusive to respondent); *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir. 1995) (reducing fee award by 46% due to respondent's "straitened financial circumstances"); *Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing award by 15% in light of respondent's financial condition and because awarding full fee would unduly limit respondent's ability to support his children); *Willing v. Purtill*, No. CIV. 07-1618-AA, 2008 WL 299073, at *1 (D. Or. Jan. 31, 2008) (reducing fee award by 15% due to respondent's financial circumstances, particularly his unemployment). Among other factors, courts have considered "straitened financial circumstances," *see Rydder*, 49 F.3d at 373–74, and a respondent's responsibility to support his or her children, *see Berendsen*, 938 F. Supp. at 739, as reasons for reduction of an award for attorney's fees and costs. The burden is on Respondent to show that an award of attorney's fees and costs would be clearly inappropriate. *See Saldivar*, 879 F. Supp. 2d at 632.

All we know regarding Respondent's financial situation is that "Respondent has already incurred massive expenses relocating the minor child in connection with the ruling of this Court. She is currently unemployed and lacks the ability to pay the amount requested by the petitioner." *See* ECF No. 35 at 2. The evidence adduced at

13

trial shows that the father is not in the best financial circumstances either. *See generally*, ECF No. 28. But in light of Respondent's stated financial circumstances, namely her unemployment, the Court reduces her obligation by 10% to comport with the goals of ICARA. *See Willing,* 2008 WL 299073, at *1.

### D. Award of Attorney's Fees and Costs

Accounting for all the aforementioned reasons, the Court concludes that Petitioner's attorney's fees and costs of $33,865.12 are reasonable. Nonetheless, considering the financial status of both parties and the facts in this case, Respondent's obligation is reduced to 90% of Petitioner's attorney's fees and costs, or $30,478.61.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART.**

The Motion is **GRANTED** insofar as the Court **AWARDS** $30,478.61 in attorney's fees and costs to Petitioner.

The Motion is **DENIED** insofar as the Court denies Petitioner's request for travel expenses for the paternal grandfather, *see* ECF No. 33-5 at 4, to travel to the United States with Petitioner to retrieve GRT.

The Motion is **DENIED WITHOUT PREJUDICE** insofar as Petitioner has **seven (7) days** from the docketing of this Order to re-urge the portion of his Motion seeking Mr. Bastos's fee. Petitioner must provide documentation and affidavit(s)

14

supporting Mr. Bastos's fee, *see ante* at 5–6, with more heft than those found insufficient in *Haylock*, 2013 WL 5410463 at \*3–4, or the Motion will be denied again.

**MONROE, LOUISIANA**, this 21st day of August, 2025.

_____
Terry A. Doughty
United States District Judge